**EX PARTE Eric Reed MARASCIO, Applicant**

**NO. WR–80,939–01, WR–80,939–02, & WR–80,939–03**

Court of Criminal Appeals of Texas.

Filed: October 7, 2015

John Schomburger, Plano, for Appellant.

John R. Rolater, Jr., Assistant District Attorney, McKinney, Lisa C. McMinn, State's Attorney, Austin, for the State.

Keasler, J., filed a concurring opinion in which Hervey and Yeary, J.J., joined.

### OPINION

Per curiam.

Applicant was convicted of three charges of felony Bail Jumping and Failure to Appear, and he was sentenced to eight years' imprisonment for each charge, to run concurrently. In these applications for writ of habeas corpus under Article 11.07 of the Code of Criminal Procedure, Applicant contends that these multiple convictions violate the constitutional prohibition against double jeopardy. We filed and set these applications to determine several issues associated with Applicant's double-jeopardy claims.[1] We now conclude that

---

1. *Ex parte Marascio*, Nos. WR–80,939–01, WR–80,939–02, & WR–80,939–03, 2014 WL 2002276, 2014 Tex. Crim. App. Unpub. LEX-

Applicant is not entitled to relief. Relief is denied.

Richardson, J., filed a concurring opinion in which Newell, J. joined.

Yeary, J., filed a concurring opinion in which Keasler, J., joined.

Meyers, J., filed a dissenting opinion.

Johnson, J., filed a dissenting opinion.

Alcala, J., filed a dissenting opinion in which Johnson, J., joined.

## CONCURRING OPINION

Keasler, J., filed a concurring opinion, in which Hervey and Yeary, JJ., joined.

I concur in denying Eric Maracio's applications for writ of habeas corpus. However, I would do so based on this Court's holding in *Ex parte Townsend* and its underlying logic and intent. In resolving certain claims, our habeas corpus jurisprudence lacks a consistent theory of cognizability—a term this Court understands to mean which claims are entitled to merits review. The double-jeopardy claim presented today is one example. Relying on familiar error-preservation and rights-based principles, this Court should pronounce a consistent and logical theory defined by unified principles.

## I. Preservation of Error

### A. Similarity of direct appeal and habeas corpus

Our case law has long held that the error-preservation requirement exists with equal force in habeas proceedings as it does in appellate proceedings. As a result, error preservation is generally a prerequisite to habeas corpus relief.[1] Since at least 1974 in *Ex parte Bagley*, this Court has held that "[t]he same rule as to the necessity of an objection to complained of evidence has been applied by this Court in habeas corpus cases."[2] Many years after *Bagley*, this Court continued to embrace the contemporaneous-objection rule on habeas which is, generally, that "appellate courts will not consider any error which counsel for the accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court."[3] The extension of this premise established the central vein of our habeas jurisprudence that record claims—those that should have been litigated in the trial court and on direct appeal—will be denied.[4] These principles only added to the widely recognized limitations of the writ set out by this Court over 80 years ago consistent with the writ's ancient origins: "Habeas corpus is an extraordinary writ, and the general rule is that it does not lie where relief may be had, or could have been procured by resort to another remedy. It is also settled that use of the writ will not be permitted as a substitute for appeal."[5] Like contemporaneous-objec-

IS 488 (Tex.Crim.App. May 7, 2014) (not designated for publication).

1. *Garza v. State*, 435 S.W.3d 258, 261–62 (Tex. Crim. App. 2014).

2. *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974). *See, e.g., Ex parte Jimenez*, 364 S.W.3d 866, 882 (Tex. Crim. App. 2012); *Ex parte Medellin*, 280 S.W.3d 854, 860–63 (Tex. Crim. App. 2008) (Cochran, J., concur-

ring); *Ex parte Crispen*, 777 S.W.2d 103, 105 (Tex. Crim. App. 1989) (plurality opinion).

3. *Ex parte Crispen*, 777 S.W.2d at 105.

4. *See, e.g., Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (op. on mot. for reh'g).

5. *Ex parte Wilcox*, 128 Tex.Crim. 146, 79 S.W.2d 321, 321 (1935) (citations omitted).

tion law generally, whether a particular claim should receive merits review "should be informed first and foremost by the State's legitimate interest in the integrity and finality of convictions. The appellate process is past. Any standard for deciding what claims to entertain in a collateral proceeding should be rigorous."[6] But as I later set out, the weighty interests in a conviction's integrity and finality must yield in the face of allegations of certain rights' violations that demand merits review.

In practice, one of the first expressions of the limitations of habeas corpus when an opportunity to appeal existed—and therefore afforded a forum for an adequate remedy—was *Ex parte Loper*.[7] This Court held that through an application for writ of habeas corpus, Loper claimed his conviction was "void for many reasons, all of which are matters that could have and should have been urged upon the trial of the Harris County case or upon an appeal therefrom. He failed to appeal such cause."[8] For this reason, this Court denied relief.

In *Ex parte Pena*, the sentencing judge entered a judgment indicating a fine of $10,000 when the jury assessed no fine at all.[9] Assuming that Pena raised a cognizable complaint, the Court held that he was not entitled to relief because he forfeited any error by not objecting at the time the $10,000 fine was imposed or by complaining on direct appeal.[10] The record in *Pena* established that Pena was informed that he had the option to appeal, or file a motion to reconsider the sentence, but he elected not to pursue those options.[11] Citing *Ex parte Bagley*, the Court held that he was not entitled to relief "because he could have, and should have, complained about the fine at the time it was imposed or on direct appeal."[12]

Relying heavily on the axiom "The Great Writ should not be used in matters that should have been raised on appeal," *Ex parte Townsend* held that "[e]ven a constitutional claim is forfeited if the applicant had the opportunity to raise the issue on appeal. This is because the writ of habeas corpus is an extraordinary remedy that is available only when there is no other adequate remedy at law."[13] Most likely owing to its sweeping language, *Townsend* has been viewed as a defining point in our habeas jurisprudence, but it was hardly new: If an applicant could have appealed the issue he now asserts on habeas, the merits of his claim should not be reviewed.

If *Townsend* requires that we ask "Could the applicant have brought his

---

See 2 Thomas Carl Spelling, A Treatise on Extraordinary Relief in Equity and at Law, § 1151 (Boston, Little, Brown & Co. 1893); 1 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 49 (Boston, Little, Brown & Co. 1918). Accord Ex parte Gardner, 959 S.W.2d at 199 (quoting Ex parte Groves, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978), "It is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.'")

6. *Ex parte Goodman*, 816 S.W.2d 383, 387 (Tex. Crim. App. 1991) (Clinton, J., concurring); *Ex parte Gardner*, 959 S.W.2d at 191 n. 2 (original opinion).

7. 219 S.W.2d 81 (Tex.Crim.App.1949).

8. *Id.* at 82.

9. 71 S.W.3d 336, 336 (Tex. Crim. App. 2002).

10. *Id.* at 338.

11. *Id.*

12. *Id.* at 338 & n. 7 (citing *Ex parte Boyd*, 58 S.W.3d 134, 136 (Tex. Crim. App. 2001)).

13. *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004) (citations omitted). Accord *Ex parte Nelson*, 137 S.W.3d 666 (Tex. Crim. App. 2004).

claim on appeal?" before reviewing a claim's merits, the answer turns on the nature of the right he seeks to vindicate. If it was not preserved in the trial court, then the answer turns on whether the right that the applicant seeks to vindicate is subject to procedural default. After all, if a particular right is not subject to procedural default, then the claim asserting a violation of that right can normally be raised in a direct appeal regardless of a contemporaneous objection.

## B. Incorporation of *Marin v. State*

*Marin v. State*, the watershed decision on whether rights are subject to procedural default—and therefore whether Texas Rule of Appellate Procedure 33.1's general preservation requirement applies [14]—provides a ready categorization structure well ingrained in our criminal law.[15] Whether an appellant must preserve error is controlled by where in *Marin*'s three familiar categories a particular right falls:

- Category-one rights, considered absolute rights or prohibitions, cannot be avoided even with partisan consent. "Accordingly, any party entitled to appeal is authorized to complain that an absolute requirement or prohibition was violated, and the merits of his complaint on appeal are not affected by the existence of a waiver or a forfeiture at trial." [16]

- Category-two rights are those that are not forfeitable—they cannot be surrendered by mere inaction, but are waivable if the waiver is affirmatively, plainly, freely, and intelligently made. The trial judge has an independent duty to implement these rights absent any request unless there is an effective express waiver.[17]

- Category-three rights are forfeitable and must be requested by a defendant. Many defendants' rights, including constitutional rights, are in this category and can be forfeited by inaction.[18]

*Townsend's* sweeping language, however, was broader than its aim. *Townsend* sought to cinch habeas corpus back to its original form. Returning to older precedents, *Townsend* reminded that "[h]abeas corpus is an extraordinary remedy; and, ordinarily, neither a trial court nor this Court, either in the exercise of our original or appellate jurisdiction, should entertain an application for writ of habeas corpus where there is an adequate remedy at law." [19] Traditionally, habeas corpus was available only to review jurisdictional defects or denials of fundamental or constitutional rights.[20] By broadly framing the scope of habeas to exclude all claims that could have been raised on direct appeal, *Townsend*, when read literally, excludes from habeas review the most sacred, absolute rights and prohibitions—those that, according to *Marin*, are widely considered

14. TEX. R. APP. PRO. 33.1(a) (requiring that, as a prerequisite to presenting a complaint on appeal, the record show a complaint was made to the trial court alleging specific grounds for the objection that comply with the Rules of Evidence and that the trial court ruled, or refused to rule on, the objection).

15. *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997).

16. *Id.* at 280.

17. *Id.* at 279–80.

18. *Id.* at 279.

19. *Ex parte Townsend*, 137 S.W.3d 79, 81 n. 9 (quoting *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978)).

20. *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (internal citations omitted).

critical to the proper functioning of our adjudicatory process.

Clarification of *Townsend* is required lest we render habeas corpus a shell of its former self, incapable of rendering relief on claims asserting violations of the rights and prohibitions that pose the gravest threat to our system of justice. *Ex parte Moss* is a recent proof of the principle.[21] Moss challenged the trial court's jurisdiction in revoking her community supervision. After revocation, Moss absconded and her direct appeal was dismissed.[22] Moss's jurisdictional complaint came only in the form of her habeas corpus application. Noting that jurisdiction is a systemic requirement that operates independent of litigants' wishes, this Court held that the merits of Moss's claim could be entertained irrespective of *Townsend's* broad holding.[23] *Ex parte Moss* adhered to *Townsend's* intent to restore habeas to its original intended function: a remedy to address jurisdictional errors and other equally offensive errors in the adjudicatory process.

We ought to once more refine *Townsend's* holding to further its efforts in preserving the original scope of habeas corpus and the importance of error preservation in deciding whether to evaluate the merits of an applicant's claim. Both ends are achieved by expressly incorporating *Marin's* characterization of rights on appeal to determine whether a particular right is subject to procedural default and therefore will frustrate an applicant's request for relief. In view of the historical notions of habeas corpus, only claims involving bare *Marin* category-one rights and prohibitions should escape *Townsend's* gatekeeping-like holding and receive merits review.

To be clear, this approach would not apply *Marin* to all habeas claims. In fact, an overwhelming majority of the writ applications this Court receives would be unaffected. *Marin* would not apply to claims that, in *Townsend's* parlance, could not have been brought on appeal or are better suited for collateral proceedings. Put another way, procedural-default principles will only prevent the review of record claims and those that, by their nature, typically afford a litigant an adequate forum for relief. *Marin* and error-preservation issues are generally inapplicable to a number of cognizable claims on habeas, including actual innocence, ineffective assistance of counsel, *Brady* claims, and other claims that require or are based on subsequent record development.[24] The treatment of these types of claims remains untouched by such a holding.

## II. Double–Jeopardy Claims on Habeas

### A. The *Gonzalez v. State* exception

The double-jeopardy error-preservation body of law stands in sharp relief against

---

21. *Ex parte Moss*, 446 S.W.3d 786, 788–89 (Tex. Crim. App. 2014).

22. *Id.* at 788.

23. *Id.* at 789. *See Sledge v. State*, 391 S.W.3d 104, 108 (Tex. Crim. App. 2013) ("[W]e have recognized them to be cognizable without regard to ordinary notions of procedural default—essentially because it is simply not optional with the parties to agree to confer subject matter jurisdiction on a convicting court where that jurisdiction is lacking.").

24. *See, e.g., Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996) (focusing actual-innocence claims in light of new evidence); *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004) (acknowledging ineffective-assistance-of-counsel claims generally need an expanded record which is better accomplished on habeas); *Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005) (recognizing that a trial record's insufficiency may prohibit an appellate court from resolving a particular claim on direct appeal).

*Marin*'s categorical structure and the preservation requirement of other rights. In *Gonzalez v. State*, this Court held Gonzalez had the burden to preserve his double-jeopardy complaint by objecting at or before the time the charge was submitted to the jury.[25] However, the *Gonzalez* Court allowed an exception: Because of the "fundamental" nature of double jeopardy, a double-jeopardy claim may be raised for the first time on appeal (and in dicta, on collateral attack) only when (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of usual rules of procedural default serves no legitimate state interest.[26] We have recently relied on *Gonzalez*'s holding in granting a habeas applicant relief on a double-jeopardy claim that was ostensibly raised for the first time on habeas.[27]

However, the *Gonzalez* holding has proved problematic, and our recent application of *Gonzalez* questions its continued viability. From the start, the two components of the contemporaneous-objection exception have never been clear. What does it mean to require that "the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record" and the "enforcement of usual rules of procedural default serves no legitimate state interest"? Except where a jury is instructed on separate theories for an offense in the disjunctive,[28] the clearly-apparent-from-the-record factor requires

that we reach the merits of the claim before determining whether the claim is properly presented. Determining a threshold issue of procedure based on the claim's merits results in an analytical hiccup: If there is a valid double-jeopardy violation, it is sufficiently clear on the face of the record; if there is no double-jeopardy violation, it is not.[29] Without a majority opinion passing on the issue, the Court allows this anomaly to endure.

The *Gonzalez* exception's second prong—when enforcement of usual rules of procedural default serves no legitimate state interest—has recently become even less clear. In *Langs v. State*, we noted this prong was designed to ensure that the trial court and the State were not deprived of an opportunity to remove the basis of the objection, and to be in a worse position for the lack of a defendant's objection.[30] However, a more recent case casts this meaning in doubt. In *Ex parte Denton*, this Court held, "While the state may have an interest in maintaining the finality of a conviction, we perceive no legitimate interest in maintaining a conviction when it is clear on the face of the record that the conviction was obtained in contravention of constitutional double-jeopardy protections."[31] Judge Richardson's concurring opinion claims *Denton* did not drain this prong of all meaning.[32] Yet, like in *Denton*, he would summarily find *Gonzalez*'s second prong satisfied.[33] Without any discussion, the two bare conclusions are irrec-

---

25. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).

26. *Id.* at 643.

27. *See, e.g., Ex parte Denton*, 399 S.W.3d 540, 544–45 (Tex. Crim. App. 2013).

28. *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).

29. *See, e.g., Garfias v. State*, 424 S.W.3d 54, 64 (Tex.Crim.App.2014); *Langs*, 183 S.W.3d at 688–89.

30. *Langs*, 183 S.W.3d at 686, n. 22. *See Gonzalez*, 8 S.W.3d at 645–46.

31. *Ex parte Denton*, 399 S.W.3d at 545.

32. *Post*, at 845 (Richardson, J., concurring).

33. *Id.*

oncilable. Judge Richardson disclaims *Gonzalez*'s erosion while at once attempting to solidifying it.

Aside from the *Gonzalez* exception's analytical uncertainty and inconsistent application, the express incorporation of *Marin*'s framework calls *Gonzalez*'s rationale and holding further into doubt because it is premised on double-jeopardy's "fundamental" nature—nomenclature that does not conform to *Marin*'s categories or application. Indeed, *Marin* itself initially spoke in terms of fundamental rights. Yet it did so to differentiate rights that are forfeited by inaction and those that carry special significance, only to further distill them into waivable-only rights and absolute rights and prohibitions.[34] *Marin* was a reaction to the frequent labeling of errors as "fundamental" that were immune from procedural default. At the time of the *Marin* decision, this Court recognized more than a dozen kinds of fundamental error.[35] Indiscriminate use of "fundamental errors" led to "piecemeal developments that each ha[d] somewhat different rationales. The overall situation, then, simply could not be explained by reference to any unifying principle or principles."[36]

*Gonzalez*'s rationale that in some instances double-jeopardy claims avoid procedural default because double jeopardy is fundamental does not adequately support that holding. Without further reducing double-jeopardy protections into an absolute right or prohibition or a waiver-only right, the *Gonzalez* exception is a holding with incomplete reasoning. As a result, *Gonzalez*'s treatment of double jeopardy is anomalous—it is a claim that must be preserved, yet may still be reviewed in limited circumstances. *Gonzalez*'s holdings are logically flawed, difficult to implement, irreconcilable with our procedural-default rules, and inapposite to *Marin*'s goal of achieving unified procedural-default rules. We should overrule it.

### B. Categorizing double jeopardy under *Marin*

Placing a defendant's double-jeopardy rights into a *Marin* category accomplishes two things: (1) it determines if an objection is required in the trial court in the first place, and (2) if not, it then determines whether an effective waiver is required. This is admittedly no easy task; it requires taking a holistic approach that considers the nature of the rights' importance in our judicial system and preserves the rights' potency.

Double-jeopardy rights fall outside of *Marin*'s first category because they may be waived, and therefore they cannot be absolute rights or prohibitions by definition. We have previously held that a defendant may affirmatively waive his right to the Fifth Amendment's double-jeopardy protections.[37] While a guilty plea alone does not waive a defendant's double-jeopardy rights, the record of a proceeding may indicate that a defendant may effectuate a waiver by agreeing to subject himself to double jeopardy if it benefits him.[38] In

---

34. *Marin*, 851 S.W.2d at 278–79.

35. *Sanchez v. State*, 120 S.W.3d 359, 365 (Tex. Crim. App. 2003).

36. *Id.*; *Saldano v. State*, 70 S.W.3d 873, 887–88 (Tex. Crim. App. 2002).

37. *Ex parte Birdwell*, 7 S.W.3d 160 (Tex. Crim. App. 1999) (holding that applicant waived his double-jeopardy right to be free

from a second prosecution because the record of this proceeding shows that the applicant agreed to subject himself to a second trial for the same offense); *Ex parte McJunkins*, 954 S.W.2d 39, 41 (Tex. Crim. App. 1997).

38. *Ex parte Birdwell*, 7 S.W.3d at 163–64 (citing *Menna v. New York*, 423 U.S. 61, 63 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) and

*Ex parte Birdwell,* we held "that the applicant agreed to subject himself to a second trial for the same offense, and to receive a lesser sentence which he had already earned enough credit to have discharged." [39] Because there are some instances when double-jeopardy rights may be waived, they cannot be placed in *Marin's* first category.

Further, finding that double jeopardy is an absolute right or prohibition would stifle the ability of the State and a defendant to engage in free negotiation to arrive at mutually beneficial resolutions of criminal cases. If a defendant chooses to subject himself to a potential double-jeopardy violation because, in his judgment, it results in a beneficial outcome of a pending case instead of standing on his double-jeopardy rights, he should be free to do so.[40] In a negotiated plea bargain, a defendant already expressly gives up a whole host of rights, including the right to a jury trial, the right to require the State to prove guilt beyond a reasonable doubt, the right to confront and cross-examine witnesses against the defendant, and in certain cases, the right to be sentenced by a judge considering the entire range of punishment.[41] It makes little sense to elevate double-jeopardy rights to a station so sacrosanct that the defendant himself—and for whom those rights exist—may not intentionally forego them.

The nature of double-jeopardy protections leads me to conclude that they are best suited as category-two *Marin* rights. Although *Gonzalez's* use of the term fundamental in describing double jeopardy was overly broad, it correctly recognized double-jeopardy protections as substantively different from other rights extinguished by mere inaction. The United States Supreme Court has consistently noted that, with its foundation in common law, double-jeopardy rights are deeply ingrained in our system of jurisprudence. It is well established that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." [42] The Supreme Court continued, "Like the right to trial by jury, it is clearly 'fundamental to the American scheme of justice.' " [43] And the ability to waive a trial by jury is equally established:

> [A]n accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel. There is nothing in the Constitution to prevent an accused from choos-

---

*United States v. Broce,* 488 U.S. 563, 575, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)).

**39.** *Id.* at 164. *See Jeffers v. United States,* 432 U.S. 137, 153, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (holding that Jeffer's affirmative request for separate trials "deprived him of any right that he might have had against consecutive trials.").

**40.** *See Ex parte Birdwell,* 7 S.W.3d at 160 (holding that applicant waived his double-jeopardy right to be free from a second prosecution because the record of the proceeding

shows that the applicant agreed to subject himself to a second trial for the same offense).

**41.** *Grado v. State,* 445 S.W.3d 736, 740 (Tex. Crim. App. 2014). *See Mendez v. State,* 138 S.W.3d 334, 344 (Tex. Crim. App. 2004).

**42.** *Benton v. Maryland,* 395 U.S. 784, 796, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)).

**43.** *Id.*

ing to have his fate tried before a judge without a jury even though, in deciding what is best for himself, he follows the guidance of his own wisdom and not that of a lawyer.[44]

Although double-jeopardy rights are prominent fixtures within our criminal-justice system, they are not barriers. Placing double jeopardy within *Marin*'s second category strikes the right balance consistent with their nature. Not simply extinguished by inaction or inattention, double-jeopardy rights must be affirmatively waived. This categorization preserves double-jeopardy rights' ability to provide individual protections while at the same time permitting a defendant to relinquish them if he so chooses. Placing double-jeopardy rights within *Marin*'s second category further ensures that defendants in the trial court will always have a forum to vindicate alleged double-jeopardy violations. By holding that double-jeopardy rights are immune to procedural default, double-jeopardy claims will always be available on appeal in the absence of an express waiver regardless of whether trial counsel preserves for appeal a double-jeopardy complainant. This approach forecloses these claims on habeas, but the ability to seek relief in the appellate courts far exceeds any potential relief after the appellate process has come and gone.

### III. Conclusion

The general rule espoused by *Townsend* (and many other opinions before it) remains the same: If an applicant could have brought a claim on direct appeal, then the claim's merits will not be entertained on habeas. A bare or primary violation of a category-one *Marin* absolute right or prohibition should be the only exception to

*Townsend.* This is contrasted by secondary claims of constitutional right violations raised by way of another right, for example instances of ineffective-assistance-of-counsel claims. Failure to exercise this available right to appeal should prove fatal to freestanding double-jeopardy claims on collateral review.

Because double-jeopardy claims are category-two waiver-only claims and the present record does not contain an effective double-jeopardy waiver, Marascio's double-jeopardy claims could have been raised on direct appeal and do not satisfy the exception to *Townsend*'s general rule. For these reasons, I concur in denying Marascio's applications for writ of habeas corpus.

### CONCURRING OPINION

Richardson, J., filed a concurring opinion in which Newell, J., joined.

The issue before this Court is whether a double jeopardy claim that could have been raised on direct appeal, but was not, may nevertheless be raised in an Article 11.07 application for writ of habeas corpus.[1] Under certain circumstances, a writ applicant may be able to raise a double jeopardy violation that otherwise might be procedurally barred from habeas review. However, in this case, I agree that Applicant's claim is not cognizable, but that is because I do not believe that a double jeopardy violation is clearly apparent from the face of the record.

### BACKGROUND

Applicant, Eric Reed Marascio, was charged under three separate indictments for the felony offenses of False Statement

---

44. *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

1. TEX. CODE CRIM. PROC. art. 11.07 (West 2014).

to Obtain Property or Credit,[2] Money Laundering,[3] and Engaging in Organized Criminal Activity.[4] All three cases were set in the 380th Judicial District Court. Three separate bonds were set—one for each case. The terms of Applicant's release under each of the three bond orders required that he be present at all court settings and wear an electronic leg monitor (ELM) twenty-four hours a day. The judge set the next court date on the three cases, and on January 8, 2009, Applicant appeared with his attorney. At that time, the court clerk set the three cases for another pre-trial hearing on March 19, 2009, and a trial date for April 20, 2009. Applicant's attorneys rescheduled the March 19th date for March 25, 2009, but the April 20th trial date remained the same. Applicant did not appear for the March 25, 2009, hearing.[5] It is undisputed that Applicant was aware of, and failed to appear for, the March 25th court date and the April 20th trial date. Applicant was found guilty of three separate charges of Bail Jumping and Failure to Appear on the March 25, 2009, hearing date and was sentenced to concurrent eight-year sentences and a $10,000 fine on each of the three charges.[6]

Applicant raised two issues on direct appeal asserting that the trial court erred in admitting false identification evidence and expert testimony that was not reliable. He did not raise the claim of double jeopardy on appeal. The Dallas Court of Appeals overruled Applicant's two issues and affirmed the judgments.[7] Applicant filed these three applications for writ of habeas corpus pursuant to the Texas Code of Criminal Procedure, Article 11.07, contending, among other things, that his convictions in these three cases violate the constitutional prohibition on double jeopardy.[8]

2. *State v. Marascio*, No. 380–82407–08 (380th Dist. Ct., Collin County, Tex. *dismissed* Dec. 16, 2010); TEX. PENAL CODE § 32.32 (West 2009).

3. *State v. Marascio*, No. 380–82408–08 (380th Dist. Ct., Collin County, Tex. *found guilty by jury & sentenced 75 years* Dec. 10, 2010); TEX. PENAL CODE § 34.02 (West 2009).

4. *State v. Marascio*, No. 380–82409–08, (380th Dist. Ct., Collin County, Tex. *dismissed* Dec. 16, 2010); TEX. PENAL CODE § 71.02 (West 2009).

5. Applicant's attorney appeared for the pre-trial hearing, but Applicant did not. Applicant had removed his ELM, and he hid from authorities for several weeks. Applicant was eventually apprehended in Greenville, South Carolina, in May of 2009, with a picture identification card under an assumed name.

6. The State tried Applicant under six separate indictments, consolidated into one trial, for the offenses of Bail Jumping and Failure to Appear under Texas Penal Code § 38.10, contending that he missed the pre-trial setting for each of the three offenses, and he missed the trial setting for each of the three offenses, for a total of six separate Bail Jumping and Failure to Appear charges. The jury failed to reach a verdict on the three indictments alleging that Applicant failed to appear on the date of trial, so the court declared a mistrial on those three charges. Because a mistrial was declared on the three Bail Jumping and Failure to Appear charges related to Applicant's failure to appear on the April 20th trial date, the issue of whether a conviction on each of those cases would have violated double jeopardy is not before this Court. We have no information on whether the State has attempted to retry the Applicant for those three cases. Should Applicant wish to raise double jeopardy related to any such *attempt*, it would not be done pursuant to Article 11.07.

7. *Marascio v. State*, Nos. 05–10–01025–CR, 05–10–01026–CR, 05–10–01027–CR, 2012 WL 472920 (Tex.App.—Dallas Feb. 15, 2012, pet. ref'd) (mem. op., not designated for publication). The judgments were reformed to correctly identify the judges who presided over the case at trial.

8. We ordered that these applications filed and set for submission to determine the following issues:
    1. Whether the double jeopardy issue was preserved by trial counsel;

## ANALYSIS

### 1. Did Applicant Preserve His Claim of Double Jeopardy For Direct Appeal?

To preserve error for appellate review, a complaint must be made to the trial court "by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."[9] The record also must show that the trial court either "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal."[10] A complaint must "simply be clear enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error."[11] A party need not recite "magic words" or cite specific statutes in order to preserve a complaint for appeal, so long as the party conveys the substance of the complaint to the trial judge.[12]

At the beginning of Applicant's trial on the six separately indicted cases of Bail Jumping and Failure to Appear, he pled "not guilty" after the prosecutor read the first indictment. After each of the remaining five indictments were read by the prosecutor, the court asked Applicant how he pled, and his response each time was "former jeopardy." The court entered a plea of "not guilty" on his behalf as to each charge. At the jury charge conference, Applicant objected that the jury charge did not contain an instruction on double jeopardy. He complained that the jury charge did not permit the jury to determine "whether or not the defendant has been placed in jeopardy after having pled to the first indictment," and whether the "five subsequent cases are functionally the same offense." The trial judge overruled his objection. The State argues that Applicant failed to preserve his claim of double jeopardy at trial because he did not specifically object to being tried for multiple offenses based on a single act. The State claims that simply urging "former jeopardy" did not sufficiently alert the trial court that Applicant was claiming multiple punishments.

Applicant voiced his double jeopardy complaint at the beginning of the trial and again at the jury charge conference. Therefore, in my opinion, he stated his complaint clearly enough to provide the judge and the prosecutor an opportunity to address and, if necessary, correct the purported double jeopardy error. Applicant's claim of "former jeopardy" was made with sufficient specificity to make the trial court aware of the nature of the complaint in compliance with Texas Rule of Appellate Procedure 33.1, thus preserving his double jeopardy claim for appellate review. However, Applicant did not raise a double jeopardy claim on direct appeal. The question

2. Whether double jeopardy is available as a free-standing claim on post-conviction habeas review where the issue was preserved at trial but not raised on direct appeal; and

3. Whether convictions for multiple charges of failure to appear arising from a single failure to appear constitute a double jeopardy violation.

9. Tex. R. App. P. 33.1(a)(1)(A).

10. Tex. R. App. P. 33.1(a)(2)(A) & (B).

11. Pena v. State, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (citing Ford v. State, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009)).

12. Bryant v. State, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012); Bennett v. State, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) (citing Hill v. State, 90 S.W.3d 308, 312 (Tex. Crim. App. 2002)).

is, can he now raise it in an 11.07 writ application.

## 2. Is Applicant's Double Jeopardy Claim Available As A Free-Standing Claim On Post-Conviction Habeas Review Where The Issue Was Preserved At Trial But Not Raised On Direct Appeal?

This Court has long held that a writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.[13] In *Ex parte Townsend*, we held that even constitutional claims are forfeited if the applicant had the opportunity to raise the issue on appeal.[14] The writ of habeas corpus is an extraordinary remedy that is available only when no other adequate remedy at law exists.[15] Since Applicant could have raised his double jeopardy claim on direct appeal and failed to do so, *Townsend*, and the collection of cases cited in and citing to *Townsend*, would arguably dictate that Applicant's double jeopardy claim is not cognizable and that relief should simply be denied without reviewing the merits of such claim.

However, in my opinion, our inquiry should not stop there. Determining cognizability of a double jeopardy claim triggers further analysis pursuant to *Gonzalez*

*v. State.*[16] *Gonzalez* involved a double jeopardy claim that was raised for the first time on direct appeal. Although this Court held in *Gonzalez* that the appellant had forfeited his double jeopardy claim on appeal by failing to raise it at trial, we announced an exception to such rule of procedural default:

> [B]ecause of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal or even for the first time on collateral attack when the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests.[17]

*Gonzalez* recognized that a double jeopardy claim may be cognizable on habeas review even though it is being raised "for the first time on collateral attack" because it is a "fundamental" right.[18]

In *Ex Parte Knipp*,[19] we unanimously held that the applicant raised a meritorious double jeopardy claim in his 11.07 writ application. Even though such claim was first raised in a subsequent application for a writ of habeas corpus, and thus would have been procedurally barred from review under article 11.07, Sec. 4(a), we determined that such claim was cognizable,

13. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex.Crim.App. Feb. 4, 1998) (op. on reh'g) (citing to *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991)). *See also Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978) (noting that "we have consistently held that habeas corpus will not lie as a substitute for an appeal")..

14. 137 S.W.3d 79, 81–82 (Tex. Crim. App. 2004).

15. *Ex parte Groves*, 571 S.W.2d at 890. *See also Ex parte Richardson*, 201 S.W.3d 712, 713 (Tex. Crim. App. 2006) ("[T]he trend of this Court has been to draw stricter bound-

aries regarding what claims may be advanced on habeas. We have often stated that 'the Great Writ should not be used' to litigate matters 'which should have been raised on appeal' or at trial, and while we have not always consistently followed this maxim in the past, in recent years we have more closely adhered to it.").

16. 8 S.W.3d 640 (Tex. Crim. App. 2000).

17. *Id.* at 643.

18. *Id.* at 643.

19. 236 S.W.3d 214 (Tex. Crim. App. 2007).

and we granted the applicant relief. Not only was the double jeopardy violation apparent on the face of the record, but the State indicated its willingness to forego its substantial interest in the finality of the applicant's plea because it would serve no legitimate state interest to enforce the usual rules of procedural default under Article 11.07, Section 4(a).[20]

In *Ex parte Denton*,[21] this Court addressed the issue of whether a double jeopardy violation could be remedied in a habeas proceeding or was procedurally defaulted because no objection was raised in the trial court.[22] Following *Gonzalez* and *Knipp*, we held that an applicant's double jeopardy claim may be reviewed on collateral attack, under an exception to the procedural bar, if two conditions are met: (1) the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record; and (2) enforcement of the usual rules of procedural default serves no legitimate state interest.[23] We concluded that the applicant's claim of a double jeopardy violation could be addressed and remedied in a habeas corpus proceeding even though he failed to raise such claim in the trial court.[24]

In this case, the issue is whether Applicant's double jeopardy claim, that was preserved at trial but not raised on direct appeal, can survive a *Townsend*-based procedural bar to relief on habeas review. Although *Denton* involved a different procedural bar—an applicant's failure to raise, and thus preserve, a double jeopardy claim at trial—I see no true distinction here. Double jeopardy protections are no less "fundamental," and the two-part *Gonzalez* rule no less applicable, simply because the procedural default occurred at the appellate level rather than at the trial level. Therefore, I would conclude that *Gonzalez* allows a double jeopardy claim to withstand the procedural bar of *Townsend*, so long as the two conditions of *Gonzalez* are met: (1) a double jeopardy violation is apparent from the face of the record; and (2) enforcement of the usual rules of procedural default serves no legitimate state interest.[25]

As to the second prong of the *Gonzalez* test, while the state may have an interest in maintaining the finality of a conviction, I see no legitimate interest in maintaining a conviction *if* it is clear on the face of the record that the conviction was obtained in contravention of constitutional double jeopardy protections. As Supreme Court Justice Stevens noted in *Oregon v. Kennedy*, "Society's interest, of course, is not simply to convict the guilty. Rather its interest is 'in fair trials designed to end in just judgments.' "[26]

---

**20.** *Id.* at 216, n. 3 (citing to *Gonzalez*, 8 S.W.3d at 642–43).

**21.** 399 S.W.3d 540 (Tex. Crim. App. 2013).

**22.** The applicant in *Denton* also claimed that his counsel was ineffective by failing to object to the double jeopardy violation in the trial court or to raise it on direct appeal.

**23.** *Denton*, 399 S.W.3d at 544 (citing to *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)).

**24.** *Id.* at 545 (quoting *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013))

("We recently held that, '[w]hen a double jeopardy violation has occurred, a writ of habeas corpus is a proper venue through which to challenge the error.' ").

**25.** *Gonzalez v. State*, 8 S.W.3d at 643.

**26.** *Oregon v. Kennedy*, 456 U.S. 667, 682, n. 7, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (Stevens, J., concurring) (quoting in part *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)) *quoted in Denton*, 399 S.W.3d at 545.

Instead, the focus in this case should be on whether Applicant has met the first prong of the *Gonzalez* test—*is a double jeopardy violation apparent on the face of the record.*

### 3. *Is A Double Jeopardy Violation Apparent From The Face of The Record?*

#### 3.1 *Cognizability*

As a general rule, before this Court reviews the merits of a collateral attack, we first determine cognizability—whether Texas Code of Criminal Procedure Article 11.07 is "the proper method for presenting Applicant's claim to this Court."[27] Once we determine that a claim is cognizable, we then can resolve a claim on the merits. As we noted in *Ex parte Carmona*, "[h]abeas corpus is reserved for those instances in which there is a jurisdictional defect in the trial court which renders the judgment void, or for denials of fundamental or constitutional rights. If the applicant's claim fits within one of these categories, then his claim is cognizable in post-conviction habeas proceedings."[28]

In *Ex parte Denton*, we followed this two-step procedure of first assessing cognizability, then resolving the claim on the merits. As we applied the rule of *Gonzalez* to our cognizability assessment in *Denton*, without explanation this Court transformed the first prong of *Gonzalez*, from requiring a double jeopardy *violation* to be apparent, to simply requiring that a double jeopardy *claim* be apparent, in order to escape the procedural bar:

> Because of the fundamental nature of the double-jeopardy protections, a double-jeopardy claim may be raised for the first time on appeal or on collateral attack if two conditions are met: 1) the undisputed facts show that the double-jeopardy violation is clearly apparent on the fact of the record; and 2) when enforcement of the usual rules of procedural default serves no legitimate state interest.[29]

> A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim. In this case, there is no need for such expansion of the record because the writ record contains all of the information needed to address the merits of the double-jeopardy claim. If we find that there is a double-jeopardy violation, the remedy will be to vacate one of the convictions; no additional proceedings will be required.[30]

In *Denton*, we decided that the applicant's double jeopardy claim was cognizable because we were going to be able to resolve the merits of such claim based upon information in the record alone. We then analyzed whether the applicant's double jeopardy claim had merit, and we held that it did.[31] Thus, the applicant's failure to object at the trial court on double jeop-

27. *Ex parte Geiken*, 28 S.W.3d 553, 556 (Tex. Crim. App. 2000).

28. 185 S.W.3d 492, 494–95 (Tex. Crim. App. 2006).

29. 399 S.W.3d at 544 (citing to *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)).

30. *Id.* at 544–45 (citing to *Ex parte Knipp*, 236 S.W.3d 214, 216, n. 3 (Tex. Crim. App. 2007); *Gonzalez v. State*, 8 S.W.3d at 643; and *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006)).

31. *Id.* at 547.

ardy grounds did not preclude his right to relief on habeas review.

Reconciling our holdings in *Townsend* and *Gonzalez* leads me to conclude that a double jeopardy claim which could have been raised on direct appeal but was not is not cognizable in an 11.07 writ, unless it meets both prongs of *Gonzalez*. And, under the rule of *Gonzalez*, a double jeopardy claim may only be raised by way of a collateral attack if the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record.

The next question is, which "record" must contain clear evidence of a double jeopardy violation? Our decision in *Ex parte Lopez*[32] answers that question. In *Lopez*, the applicant was alleged to have stolen four motorcycles: one in Hays County, two in Bexar County, and one in Bell County. Police found them hidden in a storage shed in Bexar County. Applicant was convicted of the Hays County theft in 2010, and convicted in Bexar County of aggregate theft of the motorcycles in 2011. The Bexar County indictment alleged the theft of the Hays County motorcycle and both Bexar County motorcycles, aggregating their values to determine the total amount stolen.[33] It was clearly apparent from the writ record that the applicant was being punished twice for the Hays County motorcycle theft, which constituted a double jeopardy violation. However, this Court found that the alleged error was procedurally barred because no double jeopardy violation was raised before the trial court even though it could have been. We noted that we have "not

always followed the general procedural default rules with double jeopardy claims due to the fundamental nature of the right."[34] However, following *Gonzalez*, we held that, "although the double jeopardy violation appeared to be clear when the Bexar County record was reviewed along with the documents from the Hays County record, *the error was not apparent on the face of the Bexar County record alone, which it must be to overcome the procedural bar resulting from Applicant's failure to lodge an objection before the trial court*."[35]

Unlike, for example, an ineffective assistance of counsel claim in which a writ applicant is allowed to present evidence to support his claim for relief that is outside of the trial court record, we are limited to what is in the trial court record to assess whether Applicant has met the first prong of *Gonzalez* by showing that a double jeopardy violation is clearly apparent from the face of the record. If a double jeopardy violation is not clearly apparent from the face of the trial record, then Applicant's claim does not meet the first prong of *Gonzalez*, which means that it does not survive the procedural bar under *Townsend*, and it is therefore not cognizable.

*3.2   Has There Been a Double Jeopardy Violation?   What is the Allowable Unit of Prosecution for Bail Jumping and Failure to Appear?*

Applicant was charged and convicted under three separate indictments with "intentionally or knowingly fail[ing] to appear [on March 25, 2009] in accordance with the terms of his release".[36] on the charge of

---

**32.** No. WR–78,928–03, 2013 WL 2726319 (Tex. Crim. App. 2013)(mem. op., not designated for publication).

**33.** The Bell County motorcycle was not referenced on that indictment.

**34.** *Lopez*, 2013 WL 2726319 at *2 (citing to *Gonzalez*, 8 S.W.3d at 642–43; *Denton*, 399 S.W.3d at 544).

**35.** *Id.* at *3 (emphasis added).

**36.** Tex. Penal Code § 38.10 (West 2009) ("Bail Jumping And Failure To Appear").

False Statement to Obtain Property or Credit[37], on the charge of Money Laundering[38] and on the charge of Engaging in Organized Criminal Activity.[39] He claims that his convictions for the latter two charges violated double jeopardy because he is being punished three times for the failure to appear one time on March 25, 2009.

The Double Jeopardy Clause of the Fifth Amendment,[40] applicable to the states through the Fourteenth Amendment, protects an accused against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.[41] The first two categories do not apply here. This case involves the "multiple punishments" variation. There are two types of multiple punishments claims. The first occurs when a defendant is convicted of both a greater and a lesser included offense because the same conduct is being punished once for the basic conduct and a second time for that conduct plus

more.[42] The second occurs when the same criminal act is punished under two distinct statutes and the Legislature intended the conduct to be punished only once.

The facts here do not fit within the type of multiple punishments scenario involving two different offenses where one is a lesser included offense of the other. This case seems more analogous to the multiple punishments scenario in which "the same act or transaction constitutes the violation of two distinct statutory provisions."[43] I believe, however, that the correct double jeopardy analysis can be conducted under a units inquiry. A units analysis is employed when the offenses are alternative means of committing the same statutory offense.[44] *Bigon v. State*[45] involved the issue of whether there had been multiple punishments for violating the same offense. In *Bigon*, this Court noted that "analysis of an allowable unit of prosecution involves a situation in which two offenses from the same statutory section are charged."[46] The scope of the Double Jeopardy Clause's protection against mul-

---

**37.** The indictment in Cause No. 380–80603–09 charged Applicant with failing to appear for a docketed court setting in accordance with the terms of his release in Cause No. 380–82407–08.

**38.** The indictment in Cause No. 380–80601–09 charged Applicant with failing to appear for a docketed court setting in accordance with the terms of his release in Cause No. 380–82408–08.

**39.** The indictment in Cause No. 380–80602–09 charged Applicant with failing to appear for a docketed court setting in accordance with the terms of his release in Cause No. 380–82409–08.

**40.** The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence twice put in jeopardy of life or limb." U.S. Const. amend. V.

**41.** *Ex parte Denton*, 399 S.W.3d at 545 (citing to *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Ex parte Ama-*

*dor*, 326 S.W.3d 202, 205 (Tex. Crim. App. 2010)).

**42.** *Ex parte Denton*, 399 S.W.3d at 545 (citing to *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981)).

**43.** *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (holding that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.").

**44.** *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim.App.2014).

**45.** 252 S.W.3d 360 (Tex. Crim. App. 2008).

**46.** *Id.* at 371–72.

tiple punishments depends on ascertaining the allowable unit of prosecution.[47] Even when the offenses in question are proscribed by a single statute, the protection against double jeopardy is not violated if the offenses constitute separate allowable units of prosecution.[48]

Applicant was found guilty of three offenses under the same statute (Bail Jumping and Failure to Appear), so the allowable unit of prosecution for that statute must be determined in order to decide how many offenses Applicant committed. Section 38.10 does not define the allowable unit of prosecution for the offense of Bail Jumping and Failure to Appear. The best indicator of legislative intent regarding the unit of prosecution is the gravamen or focus of the offense.[49]

Under Section 38.10, "[a] person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release." [50] Applicant argues that the gravamen of the offense is *his one time* "fail[ure] to appear." I would agree that the gravamen of the offense of Bail Jumping and Failure to Appear is, in fact, the failure to appear. However, in this case, there were three separate underlying cases, which required three separate bonds, and Applicant failed to appear when called for a hearing on each of the three separate underlying cases. Thus, the gravamen of each of these three Bail Jumping and Failure to Appear offenses is the failure to appear *on that particular case*, and that results in three separate offenses of failing to appear. The operative wording in the statute is the "fail[ure] to appear in accordance with the terms of his release," not the mere absence from the court. Applicant was released under three separate orders allowing for bail on each of the three separate underlying felonies (Money Laundering, False Statement to Obtain Property or Credit, and Engaging in Organized Criminal Activity). Each bail contract was a separate promise by Applicant to appear in court to answer that particular charge.

Logic dictates that, in this case, Applicant may be convicted for failing to appear on each separately indicted and separately bonded charge. Using a hypothetical exercise, if Applicant had been scheduled to appear in court on the three separately indicted charges on three separate days, and he missed all three days, it is clear that three separate failure to appear charges would be appropriate. If Applicant had been scheduled to appear in court on the three cases on the same day, but at different times—say 9:00 a.m., 1:00 p.m., and 3:00 p.m.—missing court on that one

47.  See *Ex Parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006) (stating that the Legislature defines whether offenses are the same by prescribing the allowable unit of prosecution, which is "a distinguishable discrete act that is a separate violation of the statute.").

48.  *Ex parte Benson*, 459 S.W.3d 67, 73 (Tex. Crim. App.. 2015) ("This latter inquiry involves determining such things as whether there were two murder victims, whether a victim who was assaulted on Monday was assaulted again on Tuesday, or whether multiple kinds of sex acts were committed against a victim.").

49.  *Harris v. State*, 359 S.W.3d 625, 630 (Tex. Crim. App. 2011). For example, in *Spradling v. State*, 773 S.W.2d 553, 557 (Tex. Crim. App. 1989), this Court determined that the gravamen of the offense for Failure to Stop and Render Aid was that the person render aid to each person injured in an accident. Therefore, it was permissible to obtain multiple convictions for failure to stop and render aid to multiple victims, even though that defendant failed to stop after the one accident.

50.  TEX. PENAL CODE § 38.10 (West 2009).

day would still result in three separate failure to appear charges. What if one court setting was at 9:00 a.m., another at 9:05 a.m., and the third at 9:10 a.m.? Applicant's absence on that day would still constitute a failure to appear for three separate court settings and a forfeiture of three separate bonds. In this case, although Applicant's three court settings were scheduled on the same day at the same time, it makes no sense to mesh three charges of Bail Jumping and Failure to Appear into one charge simply based upon when such court appearances are scheduled.

In most cases, the settings for each separate case in a court are controlled by court personnel. Applicant's contention—that the single act of failing to appear for a particular proceeding is the gravamen of the offense—is untenable because, under that interpretation, the number of prosecutions Applicant could face hinges on whether hearings on his three separate case files were scheduled together or apart. The scheduling of court appearances on separate files is an administrative matter. A statute's allowable unit of prosecution cannot be a determination based upon such administrative convenience. In

my opinion, the allowable unit of prosecution under Section 38.10 for Bail Jumping and Failure to Appear depends upon the number of cases and separate bail contracts involved.[51]

In this case, the magistrate set three separate bonds—one for each of Applicant's three felony indictments (Money Laundering, False Statement to Obtain Property or Credit, and Engaging in Organized Criminal Activity). The bondsman was liable on each bond corresponding to each of the three cases because Applicant was required to appear in court on each of these three cases. Although Applicant's court settings on March 25, 2009, were consolidated, I would conclude that, under the facts of this case, Applicant's convictions for three separate Bail Jumping and Failure to Appear offenses were not in violation of his double jeopardy rights. Therefore, because a double jeopardy violation is *not* clearly apparent from the face of the record, Applicant's double jeopardy claim does not meet the first prong of *Gonzalez.*

## CONCLUSION

I would hold that Applicant preserved his claim of double jeopardy at trial, and

51. Other jurisdictions have held that in a failure-to-appear case, the unit of prosecution depends upon the number of separate bail bonds that were forfeited. *See State v. Garvin,* 242 Conn. 296, 699 A.2d 921, 925–26 (1997) (multiple convictions for failure to appear arising out of forfeiture of multiple separate bail bonds did not violate double jeopardy clause); *State v. Richter,* 189 Wis.2d 105, 525 N.W.2d 168, 170 (1994) (holding that a defendant may be convicted once for each bail bond forfeited by failure to : appear); *Johnson v. Virginia,* No. 1138–14–2, 2015 WL 4078146, at *3 (Va. Ct. App. July 7, 2015) (holding that the Legislature intended the unit of prosecution in the failure-to-appear statute to correspond to the number of underlying offenses for which a defendant is obligated to appear). However, other jurisdictions have

held that the act of failing to appear gives rise to only one offense. *See Lennon v. United States,* 736 A.2d 208 (D.C. 1999) (holding that defendant who fails to appear for single court proceeding may be convicted of only one violation of failing to appear, even if proceeding involves more than one underlying charge); *Bristow v. State,* 905 P.2d 815 (Okla. Crim. App. 1995) (holding that the unit of prosecution for failure to appear is the act of nonappearance, rather than the number of bonds forfeited). In *Lennon,* however, the appellant was not admitted to bail, but was released on his personal recognizance after he signed a single notice to appear, and the statute under which he was convicted specifically proscribed failing to appear in court, not violating the terms of a bond agreement.

thus he could have raised it on direct appeal. Since he failed to do so, the question then becomes whether Applicant's double jeopardy claim survives a *Townsend*-based procedural bar under the two-part *Gonzalez* test. I would conclude that it does not. Because I do not believe that there was a double jeopardy violation here, (i.e., a double jeopardy violation is not apparent from the face of the record), I would hold that *Gonzalez* does not allow Applicant to circumvent the procedural bar under *Townsend,* and since Applicant's double jeopardy claim is procedurally barred (i.e., it is not cognizable), he is not entitled to relief.

## CONCURRING OPINION

Yeary, J., filed a concurring opinion in which Keasler, J., joined.

It is my understanding that one of the reasons we filed and set this post-conviction application for writ of habeas corpus was to address the latent tension between *Gonzalez v. State,* 8 S.W.3d 640 (Tex. Crim. App. 2000), and *Ex parte Townsend,* 137 S.W.3d 79 (Tex. Crim. App. 2004)— especially in light of last year's opinion in *Ex parte Moss,* 446 S.W.3d 786 (Tex. Crim. App. 2014). Today, Judge Richardson would have the Court resolve that tension by simply deferring to *Gonzalez*'s categorization of a double jeopardy claim as "fundamental." Concurring Opinion at 7, 9. But Judge Richardson does not go on to explain what he means by "fundamental," much less why *Gonzalez*'s characterization of double jeopardy rights as "fundamental" should suffice to trump the rule of forfeiture announced in *Townsend*—that an issue that was available to be raised on direct appeal, but was not, may not be broached for the first time in post-conviction habeas corpus proceedings, since habeas proceedings are not a substitute for direct appeal.

We have subsequently provided a basis for reconciliation, in *Moss.* There we held that the *Townsend* rule of forfeiture is a qualified one, and it does not apply to claims that would fit within the first category of *Marin v. State,* 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), embracing absolute requirements or prohibitions. Such category one *Marin* claims are "essentially independent of the litigants' wishes ... and cannot, therefore, be waived or forfeited by the parties." *Moss,* 446 S.W.3d at 788 (quoting *Marin,* 851 S.W.2d at 279). It seems to me that, after *Moss,* the question whether *Townsend* applies to foreclose raising a double jeopardy claim for the first time in a post-conviction habeas corpus application depends upon whether such a claim is, by its nature, a category one *Marin* claim. That is the question the Court should be asking itself today. To simply announce to the bench and bar that *Gonzalez* controls because it labeled a double jeopardy claim "fundamental"—without any explanation of what that means and without any analysis of where such a claim might fit within the *Marin* categories—begs the question entirely. After *Moss,* we do not adequately resolve the tension between *Gonzalez* and *Townsend* by simply anointing one over the other.

Because Judge Keasler addresses all the right questions, and because I agree with his answers, I join his concurring opinion.

## DISSENTING OPINION

Meyers, J., filed a dissenting opinion.

The *per curiam* opinion indicates that we filed and set these applications to determine several issues associated with Applicant's double jeopardy claims. Because the *per curiam* opinion does not indicate on what basis we are denying relief, it is impossible to know what rationale or legal theory was applied in order to conclude

that Applicant is not entitled to relief. It is curious to note that the concurring opinions go to great lengths to indicate that their vote was to procedurally default Applicant rather than to conduct any analysis of our double jeopardy jurisprudence.

In *Gonzalez v. State*, 8 S.W.3d 640 (Tex. Crim. App. 2000) this Court said that some double jeopardy claims may be cognizable in a writ of habeas corpus if certain conditions were met. We later stated that "when a defendant has an adequate remedy at law for his claim, he may not raise the claim in an application for a writ of habeas corpus." *See Ex Parte Townsend*, 137 S.W.3d 79, 82 (Tex. Crim. App. 2004). This Court has continued to restrict access to the writ of habeas corpus even though the legislature has been active in expanding the writ process. In the years since *Townsend* and *Gonzalez* came out, the legislature has enacted additional avenues for seeking relief in applications for writ of habeas corpus-including Code of Criminal Procedure Articles 11.072 and 11.073—making it abundantly clear that it wants to expand the writ process. Instead of following this directive, this Court's response has been to find any possible way to deny applicants relief. What defendant immediately knows at the close of his trial the available avenues for getting relief? I would guess very few, which is all the more reason we should allow them to raise issues later in a writ of habeas corpus. It is hard to figure out exactly what the Court's purpose is for trying to limit a defendant's access to relief because I can find no legitimate law or theory for it and it is blatantly contrary to the wishes of the legislature. Apparently the Court does not want to take the time to try to resolve writ questions. As I stated in my dissent in *Townsend*, "The legislature provided both the writ of habeas corpus and direct appeal as avenues for relief. This Court should not usurp the power of the legislature by saying that you can only use one remedy after you have exhausted the other." 137 S.W.3d at 83.

It is embarrassing and almost tragic the lengths to which this Court will go to avoid having to analyze and decide pressing legal questions. Just within the last two weeks we stepped away from deciding an interesting eyewitness identification question involving the weapon-focus effect by posturing some kind of scenario where the defendant did not provide sufficient information to allow the trial court to determine that the expert's testimony was reliable, which was in essence totally uncalled for because the trial judge completely handled the admission process of the expert testimony. *See Blasdell v. State*, 470 S.W.3d 59 (Tex. Crim. App. 2015). And in *Jaganathan v. State*, No. PD–1189–14, —— S.W.3d ——, 2015 WL 5449576 (September 16, 2015), we also decided to not analyze a unique question of law regarding whether there is or is not criminal liability for venturing into a passing lane on a freeway. Along with the recent laches case *Ex parte Perez*, 445 S.W.3d 719 (Tex. Crim. App. 2014), this court seems to be indicating that it is truly not interested in dealing with pressing and important legal questions. I think those joining the *per curiam* opinion have walked away from an interesting and probably significant legal question. My evaluation of Applicant's claim is that it had merit and it is a shame that the *per curiam* opinion is not telling us on what legal or procedural basis relief is being denied. I therefore respectfully dissent.

## DISSENTING OPINION

Johnson, J., filed a dissenting opinion.

We have not, at least recently, required "magic words" in order to accomplish a legal act. *Bennett v. State*, 235 S.W.3d 241

(Tex. Crim. App. 2007). It appears that we have, at least in this case, reverted. The record reflects that there had been a pre-trial discussion, unfortunately off the record, during which applicant "took the position that it's all one act." When charged by two sets of three identical indictments, a position of "it's all one act" rather obviously raises the issue of double jeopardy: one act punished multiple times. Counsel need not utter the magic words "Objection, double jeopardy" in order to raise the issue. While inartfully stated, a plea of "former jeopardy," coupled with a request for, and objection to the lack of, a double-jeopardy instruction in the jury charge, clearly put the trial court on notice that applicant was asserting that he was unconstitutionally being subjected to multiple punishments for a single act. That claim is apparent on the face of the record. And the trial court was on notice at a time at which it could have addressed the issue. As the state observed in its brief, "If raised and litigated, the trial court could obtain the input of the prosecutor, review case law, hear argument of counsel, and effectuate a remedy in the most timely and direct fashion." [1] The opportunity to do all those things was present, yet the trial court, by failing to recognize and address the issue, prevented litigation on double jeopardy. Double jeopardy may be a waivable right, but applicant did not waive his rights. I would hold that applicant preserved error. *Chase v. State*, 448 S.W.3d 6, 28 (Tex. Crim. App. 2014) ("We also conclude that appellant was permitted to preserve error either by lodging a sufficiently specific objection in compliance with Article 36.14 or by submitting a proposed instruction in compliance with Article 36.15.").

Applicant's counsel on appeal apparently failed to raise the issue of double jeopardy. Appellants do not often tell appellate counsel what issues to raise and, even if they did, appellate counsel does not have to consult with the appellant because the issues raised must all be preserved in the record.[2] An appellant may not even know what issues are being appealed. An appellant's only recourse on a claim of ineffective assistance is to file a writ asserting that claim.

> The second reason we have given for not enforcing a procedural bar in this context is because there is not generally a realistic opportunity to adequately develop the record for appeal in post-trial motions. In this regard, we have noted that a post-conviction writ proceeding, rather than a motion for new trial, is the preferred method for gathering the facts necessary to substantiate such a Sixth Amendment challenge: .... Hence, in most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims.

*Robinson v. State*, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000).

Violation of the right to not be subjected to double jeopardy is a constitutional er-

---

1. The state avers that it "believes a full-Statement of Facts regarding the underlying case will be beneficial to the Court." The next 14 pages are a recitation of applicant's activities out of court, which are unrelated to the single fact of consequence—that applicant did not appear on a given court date. State's brief, fn.2 p. 2 and pp. 2–16.

2. *Ex parte Moss*, 446 S.W.3d 786, 790 (Tex. Crim. App. 2014) ("[T]he resolution of Applicant's claim turns on documents in the record...."); *Ex parte Niswanger*, 335 S.W.3d 611, 615 (Tex. Crim. App. 2011) ("Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct.")

ror, which may be raised for the first time on an application for a writ of habeas corpus. *Ex parte Banks,* 769 S.W.2d 539, 541 (Tex. Crim. App. 1989) ("Because this error was of constitutional magnitude, we considered it on application for writ of habeas corpus even though the error was not raised on direct appeal."); *Ex parte Milner,* 394 S.W.3d 502, 506 (Tex. Crim. App. 2013) ("When a double-jeopardy violation has occurred, a writ of habeas corpus is a proper venue through which to challenge the error."). Because applicant preserved error as to deprivation of a constitutional right, he may raise it in his application for a writ, and we may address it. *Ex parte Townsend,* 137 S.W.3d 79 (Tex. Crim. App. 2004) does not apply here because *Townsend* is a case that is only about statutory interpretation of Article 42.08 of the Texas Code of Criminal Procedure, which governs cumulation of sentences. The *Townsend* opinion contains neither the word "double" nor the word "jeopardy."

No one contests that applicant was placed on bond on three felonies or that he twice failed to appear. Nor does anyone contest that he was convicted of three charges of failure to appear and that the trial of the remaining three charges resulted in a mistrial, which allows the state to retry him on those charges.[3]

I find it odd that the state argues that "[p]enalizing the violation of a bond rather than the singular failure to appear provides a more direct relationship between the harm and the penalty. After all, if a defendant fails to appear on three bonds, the surety forfeits the principal in each bond, as was the case here." Bondsmen assess the risk that a given client will abscond and charge a commensurate fee, usually a substantial one of at least ten percent; it is their business to assume risk, which in some ways is like laying down chips at the Blackjack table. Sometimes they correctly assess the risk and gain substantial income for fairly little work. Sometimes they miscalculate and become liable for the principal. Again, that is their business—the way they earn their living. The state's role in a criminal prosecution is to prosecute the offender. It is in no way the role of the state to safeguard the income of a bondsman. A defendant has already paid whatever the bondsman charged and may, at least theoretically be subject to being sued by the bondsman, but that "harm" is not relevant to any criminal charges. The bondsman will indeed suffer financial loss, but the harm that is relevant here is harm to an actual party to the lawsuit, in this case, the defendant, and to the administration of justice. Having six third-degree offenses instead of two may not harm a defendant when he also has a 75-year sentence in another case, but we are not deciding only this case; we are deciding the law, and having six sentences, even concurrent ones, instead of two is likely to have a negative effect on the Parole Board's decision on release.

By the language of the statute, the gravamen of the offense is that the defendant

---

**3.** I was startled to read in the state's brief that by "failing to apprise the trial court and State of this issue, Applicant appears to have deprived the State of a proper opportunity to prosecute him for at least one more offense. After all, the second set of indictments alleged a different failure to appear. Thus, if at trial Applicant's Double Jeopardy theory holds water, the State still could have obtained a conviction for the failure to appear." This assertion totally ignores the fact that the state did have a "proper opportunity to prosecute him for at least one more offense" and in fact did so; the jury failed to reach verdicts on the three indictments that alleged the second failure to appear, and the state is free to try appellant again on those charges.

failed to appear. Using the eighth-grade grammar test, a phrase that is preceded by a preposition ("in"),[4] is a circumstance, not a gravamen.[5] Ergo, "in accordance with the terms of his release," is a circumstance that makes failure to appear in court an offense. The sole gravamen of the offense remains the act of failing to appear, thus the unit of prosecution is the number of times the offense was committed. *Ex parte Goodbread*, 967 S.W.2d 859, 860 (Tex. Crim. App. 1998) ("For Double Jeopardy purposes, the same offense means the identical criminal act, not the same offense by name.... [W]hen one cannot determine from the State's pleadings whether the offenses prosecuted are the same, the court must look to the proof offered at trial."). In this case, therefore, the state may charge him with two offenses, one for each missed court date. *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).

Much has been made of "in accordance with the terms of his release." According to the indictments in these cases,

> after being lawfully released from custody on bail for a pending felony criminal offense ... styled *The State of Texas v. Eric Reed Marascio*, with the condition that he subsequently appear in court,

did intentionally and knowingly fail to appear for a docketed court setting in accordance with the terms of his release, namely, his Felony Surety Bond for $5,000.00 dated December 5, 2008, and filed with the District Clerk of Collin County on December 11, 2008, against the peace and dignity of the State. (Italics in original.)

The "terms of his release" are that a bondsman must post bail in the amount of $5,000. That transaction is a private contract with a third-party, not a contract with the court to be released on a personal recognizance bond.[6] He fulfilled his obligation "in accordance with the terms of his release" by hiring a bondsman to post bail. The only way in which the dignity of the trial court was harmed was that he failed to appear. He did that on two occasions and is therefore subject to one punishment for each failure to appear: a single punishment for a single act.

In some cases, the terms of his release may include more than simply posting bail. And there are statutory defenses to prosecution,[7] so we need something to measure an alleged failure to appear against, hence the language "in accordance with the terms of his release."

---

4. For the use of the eighth-grade grammar test as to another preposition, "by," *see, e.g., Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007) ("Generally, adverbial phrases, introduced by the preposition 'by,' describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.") (quoting *Jefferson v. State*, 189 S.W.3d at 315–16 (Cochran J., concurring)).

5. "The violation of the terms of release is the gravamen of the offense,...." State's brief, p. 31.

6. Assuming that it is proper for a court to insert itself into a private civil contract be-

tween a defendant and a bondsman, may the court then criminalize any breach of that private contract? What if a defendant is meticulous about court dates but fails to check in with the bondsman?

7. Tex. Penal Code Sec. 38.10

. . .

(b) It is a defense to prosecution under this section that the appearance was incident to community supervision, parole, or an intermittent sentence.

(c) It is a defense to prosecution under this section that the actor had a reasonable excuse for his failure to appear in accordance with the terms of his release.

We do not charge a thief with four thefts if he steals a wallet that contains cash and three credit cards; we charge him with a single theft. And if a burglar enters a home without consent once and commits theft, assault, and arson, he may be charged with only one burglary, not three.[8] Likewise we should not condone three charges for a single act of failing to appear.

The state urges that if "the Court holds that jumping bail on multiple cases is a single offense, it would create a perverse incentive to jump bail when facing multiple charges and reduce the utility of the bail jumping statute." State's brief at 18. The logic of that assertion escapes me. The mere fact that a defendant faces multiple charges may be reason enough to abscond. And if a defendant is facing multiple charges, he would face the same number of charges, plus at least one more, when he is returned to custody. If this Court condones multiple punishments for a single failure to appear, those charges will be part of the same criminal episode and very likely will be tried in the same proceeding, making, in most cases, concurrent sentences mandatory pursuant to Article 42.08 of the Texas Code of Criminal Procedure. Penal Code Section 38.10(f) states that "[a]n offense under this section is a felony of the third degree if the offense for which the actor's appearance was required is classified as a felony." Assuming the lack of prior offenses with which to enhance the punishment range—which may be a stretch in many cases—the defendant will be subject to a maximum of ten additional years' imprisonment, no matter how many indictments are brought. Such a sentence may well not deter flight if the underlying

charges are offenses of a higher degree and are subject to stacking.

I would address, on our own motion, a claim of ineffective assistance as to appellate counsel for failing to appeal the preserved claim of constitutional error that subjected applicant to double jeopardy. Further, I would hold that a single act of failure to appear is subject to a single punishment, no matter how many individual charges are pending.

I respectfully dissent.

## DISSENTING OPINION

Alcala, J., filed dissenting opinion in which Johnson, J., joined.

Without any explanation or analysis, this Court's per curiam opinion holds that applicant is not entitled to relief. And although it acknowledges that we "filed and set these applications to determine several issues associated with applicant's double-jeopardy claims," this Court's opinion, again, without any explanation or analysis, does not even mention the issues, much less analyze them. I determine that these claims should not be rejected on the basis of procedural default, and I conclude that the application for a writ of habeas corpus filed by Eric Reed Marascio, applicant, should be granted. I, therefore, respectfully dissent.

### I. Analysis of Procedural Default

With respect to the suggestion that this applicant's double-jeopardy claims should be rejected due to procedural default, I respectfully disagree. I would apply this Court's current precedent to this case as a basis for concluding that applicant's claims are not procedurally barred. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim.

---

**8.** He may, however, be charged separately for theft, assault, and arson, but then not for burglary.

App. 2000). Our jurisprudence sets forth (1) common-law principles applicable to habeas corpus relief, (2) this Court's precedent in which it has granted habeas relief for double-jeopardy violations in cases with a procedural posture similar to this case, and (3) our current rule that permits this Court to take procedural default into consideration in a way that is more appropriate for applications for writs of habeas corpus.

First, this Court adheres to longstanding common-law principles to fairly and equitably resolve applications for writs of habeas corpus. The Texas Constitution gives this Court broad authority to issue the writ of habeas corpus. TEX. CONST. art. V, § 5(c); *Ex parte Davis*, 171 Tex.Crim. 629, 353 S.W.2d 29, 32 (1962) ("We entertain no doubt that this Court has ample authority to issue the writ of habeas corpus in almost any conceivable case.") (citing *Ex parte Degener*, 30 Tex.App. 566, 17 S.W. 1111 (1891)). As a general rule, however, post-conviction writs of habeas corpus are reserved for jurisdictional defects and denials of fundamental or constitutional rights. *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994); *Ex parte Sadberry*, 864 S.W.2d 541, 542 (Tex. Crim. App. 1993). The right against double jeopardy is undeniably a constitutional right, made applicable to the states by the Fourteenth Amendment. *See* U.S. CONST. amend. V, XIV; *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Furthermore, this Court has held repeatedly that double-jeopardy protections are of a fundamental nature. *See Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013); *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzalez*, 8 S.W.3d at 643.

Rather than apply strict procedural rules to decide applications for writs of habeas corpus, this Court traditionally has applied common-law equitable principles in determining whether post-conviction relief is warranted. We have long acknowledged that the writ of habeas corpus is of common-law origin and governed by common-law equitable principles. *Ex parte Smith*, 444 S.W.3d 661, 664 (Tex. Crim. App. 2014); *Ex parte Perez*, 398 S.W.3d 206, 210–11 (Tex. Crim. App. 2013); *Ex parte Gaither*, 387 S.W.3d 643, 648 (Tex. Crim. App. 2012); *Drake*, 883 S.W.2d at 215; *Ex parte Emmons*, 660 S.W.2d 106, 110 (Tex. Crim. App. 1983). "[T]he writ of habeas corpus is an extraordinary remedy, any grant of which must be underscored by elements of fairness and equity." *Perez*, 398 S.W.3d at 216; *see also Ex parte Parrott*, 396 S.W.3d 531, 534 n. 6 (Tex. Crim. App. 2013) (observing that habeas corpus relief is "an extraordinary remedy premised on equity and not on error correction as is the focus of direct appeal"). By applying the same strict procedural-default rules that apply to claims raised on direct appeal in deciding to deny habeas relief to an applicant claiming a double-jeopardy violation, this Court fails to fairly and equitably resolve applications for writs of habeas corpus in conformity with common-law principles.

Second, for over forty years, this Court has considered, and in numerous cases granted, habeas relief for double-jeopardy violations, and this Court should continue to adhere to that precedent. *See, e.g., Ex parte Scelles*, 511 S.W.2d 300 (Tex. Crim. App. 1974); *Ex parte Calderon*, 508 S.W.2d 360 (Tex. Crim. App. 1974); *Ex parte Evans*, 530 S.W.2d 589 (Tex. Crim. App. 1975); *Ex parte Farris*, 538 S.W.2d 134 (Tex. Crim. App. 1976); *Ex parte Jewel*, 535 S.W.2d 362 (Tex. Crim. App. 1976); *Ex parte Hilliard*, 538 S.W.2d 135 (Tex. Crim. App. 1976); *Ex parte Pleasant*, 577 S.W.2d 256 (Tex. Crim. App. 1979); *Ex parte Morehead*, 596 S.W.2d 895 (Tex. Crim. App. 1980); *Ex parte McAfee*, 761

S.W.2d 771 (Tex. Crim. App. 1988); *Ex parte Stover*, 946 S.W.2d 343 (Tex. Crim. App. 1997); *Ex parte Diaz*, 959 S.W.2d 213 (Tex. Crim. App. 1998); *Ex parte Ervin*, 991 S.W.2d 804 (Tex. Crim. App. 1999); *Ex parte Hawkins*, 6 S.W.3d 554 (Tex. Crim. App. 1999); *Ex parte Cavazos*, 203 S.W.3d 333 (Tex. Crim. App. 2006); *Ex parte Knipp*, 236 S.W.3d 214 (Tex. Crim. App. 2007); *Ex parte Senterfitt*, No. AP–75,659, 2007 WL 1138875 (Tex. Crim. App. April 18, 2007); *Ex parte Lacy*, No. AP–75,939, 2008 WL 2390978 (Tex. Crim. App. une 11, 2008); *Ex parte Ramos*, No. AP–75,962, 2008 WL 2673713 (Tex. Crim. App. July 2, 2008); *Ex parte Padilla*, No. AP–76,266, 2009 WL 4936403 (Tex. Crim. App. Dec. 16, 2009); *Ex parte Amador*, 326 S.W.3d 202 (Tex. Crim. App. 2010); *Ex parte Gallegos*, Nos. AP–76,661 & AP–76,662, 2011 WL 4827825 (Tex. Crim. App. Oct. 12, 2011); *Ex parte Chaddock*, 369 S.W.3d 880 (Tex. Crim. App. 2012); *Ex parte Carle*, 369 S.W.3d 879 (Tex. Crim. App. 2012); *Ex parte Denton*, 399 S.W.3d 540 (Tex. Crim. App. 2013); *Ex parte Gamble*, Nos. AP–77,014 & AP–77,015, 2013 WL 1654931 (Tex. Crim. App. April 17, 2013); *Ex parte Stepp*, No. AP–77,011, 2013 WL 1654875 (Tex. Crim. App. April 17, 2013); *Ex parte Marrufo*, No. WR–80,822–01, 2014 WL 1396172 (Tex. Crim. App. April 9, 2014); *Ex parte Wright*, No. WR–42,963–02, 2014 WL 5369863 (Tex. Crim. App. Sept. 24, 2014); *Ex parte Benson*, 459 S.W.3d 67 (Tex.Crim.App.2015).

Two years ago, this Court granted relief on a subsequent application for a writ of habeas corpus under the theory that a double-jeopardy claim is essentially an actual-innocence claim for purposes of overcoming the bar on subsequent writs. *See Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). We stated, "In cases claiming double-jeopardy violations, an applicant may prove actual innocence by providing facts sufficient to establish by a preponderance of the evidence that, but for a double-jeopardy violation, no rational juror could have found the applicant guilty of the challenged offense beyond a reasonable doubt." *Id. Milner* cited to *Knipp*, in which this unanimous Court stated, "We decide that applicant's subsequent writ and the record establish 'that, by a preponderance of the evidence, but for [the double-jeopardy violation] no rational juror could have found the applicant guilty [of the jeopardy-barred offense] beyond a reasonable doubt.'" *Knipp*, 236 S.W.3d at 217 (quoting Tex. Code Crim. Proc. art. 11.07, § 4(a)(2)). In light of its procedural similarities to an actual-innocence claim, a double-jeopardy claim should likewise not be subject to rigid procedural-default rules that this Court has recognized are inappropriate in both contexts. Under the common law that has been applied by this Court for nearly half a century, strict procedural rules are inappropriate when considering whether to grant habeas relief for a double-jeopardy violation.

Third, this Court should continue to apply its precedent in *Gonzalez* that has worked reasonably well in permitting certain double-jeopardy claims to be rejected on the grounds of procedural default while permitting others to be addressed on their merits through applications for writs of habeas corpus when the enforcement of procedural-default rules would serve no legitimate State interest. *See Gonzalez*, 8 S.W.3d at 643. In *Gonzalez*, this Court described the issue it was addressing by stating, "In this case we decide that [Gonzalez's] 'multiple punishments for the same offense' federal constitutional double jeopardy claim is a forfeitable claim which may not be raised for the first time on appeal." *Id.* at 640. This Court held that Gonzalez's complaint was procedurally forfeited because "[t]imely raising the matter in the trial court would have provided the trial

court and the prosecution an opportunity to remove the basis of the objection, and it also would have provided the prosecution" the opportunity to proceed on the second paragraph without the risk of an unnecessary retrial. *Id.* at 645–46. In explaining its reasoning as to why some double-jeopardy claims are subject to procedural default and others are not, this Court stated,

> Our case-law on preservation of double jeopardy claims is not a model of clarity. The overriding principles expressed by this case-law are that, because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal or even for the first time on collateral attack when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests.

*Id.* at 642–43 (citations omitted). In *Gonzalez,* this Court clearly determined that, based on a case-by-case assessment of each record, some double-jeopardy claims would be subject to procedural default while others would not, noting that not "*all multiple punishments claims may be raised for the first time on appeal,*" but that "[a]ppellate courts, even the Supreme Court, have addressed the merits of arguably unpreserved claims when ... the other party does not object." *Id.* at 644. Anyone who suggests that *Gonzalez* was merely a jury-charge case misunderstands this Court's reasoning and holding. *Gonzalez* discussed the precise issue that is before this Court in the present case, and it held that courts have traditionally addressed even unpreserved double-jeopardy claims when appropriate.

In general, a constitutional claim is forfeited on collateral review if an applicant had the opportunity to raise that claim on direct appeal but failed to do so. *See Ex parte Townsend,* 137 S.W.3d 79, 81 (Tex. Crim. App. 2004). However, due to its fundamental importance, under *Gonzalez,* an applicant may raise a double-jeopardy claim for the first time on collateral attack if (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of usual rules of procedural default serves no legitimate State interest. *See Gonzalez,* 8 S.W.3d at 643. A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the claim. *Denton,* 399 S.W.3d at 544; *Knipp,* 236 S.W.3d at 214, 216 n. 3. We have also indicated that, where the interests of justice outweigh the State's interest in the finality of a conviction obtained in contravention of constitutional double-jeopardy protections, then enforcing the normal procedural rules serves no legitimate State interest. *Denton,* 399 S.W.3d at 545.

The *Gonzalez* rule has been used to both permit and deny double-jeopardy claims raised in post-conviction writ proceedings. *Compare id.* (finding both prongs of the *Gonzalez* test met and granting habeas relief on double jeopardy), *with Ex parte Lopez,* No. WR–78,928–03, 2013 WL 2726319, at *1 (Tex. Crim. App. June 12, 2013) (per curiam) (finding claim procedurally barred based on the absence of a double-jeopardy violation apparent on the face of the record). Although evaluating whether a double-jeopardy claim is clearly apparent on the face of the record requires addressing the merits of the claim in some cases, that type of analysis is not always necessary. *Compare Garfias v. State,* 424 S.W.3d 54, 64 (Tex.Crim.App.2014), *with Guerrero v. State,* 305 S.W.3d 546, 560 (Tex. Crim. App. 2009).

I note here that it is inappropriate to characterize this Court's opinion in *Ex parte Townsend* as a decision applicable particularly to double-jeopardy claims. *See Townsend*, 137 S.W.3d at 81–82. The facts underlying the post-conviction claim in *Townsend* were that the defendant had pleaded guilty to possession of cocaine in 1990, and he was sentenced to ten years' imprisonment with the condition that he successfully complete boot camp in prison. *Id.* at 80. After he completed the boot camp, Townsend was placed on probation. *Id.* In 1991, the State filed a motion to revoke his probation. *Id.* In 1992, Townsend was found guilty of murder, and, on that same day, his probation was revoked. *Id.* The trial court cumulated both sentences. *Id.* In a post-conviction writ application, Townsend asserted that the "stacking order was improper because he had already begun his sentence by attending Boot Camp." *Id.* This Court held that Townsend had forfeited his claim by failing to raise the issue on direct appeal. *Id.* at 81. In light of *Townsend*, this Court has repeatedly stated that, in general, constitutional claims may be procedurally forfeited by a lack of objection at trial or a failure to present the complaint on appeal. *See id.* But, as the extensive number of cases cited above demonstrates, in the decade since *Townsend* was decided, this Court has not applied strict procedural-default rules to double-jeopardy claims presented on habeas and has instead evaluated such claims on a case-by-case basis to determine whether they should be subject to procedural forfeiture or evaluated on their merits. *See Gonzalez*, 8 S.W.3d at 643.

I recognize that sometimes the *Gonzalez* factors can be difficult to apply, but the answer to the problem should not be to throw out the entire remedy merely because there are a few flies in the ointment. An imperfect remedy is surely better than no remedy at all, which would occur if strict procedural default became the law applicable to double-jeopardy claims. Applying the *Gonzalez* rule to this case, I would hold that the question before us is one of a matter of law and that procedural default should not apply to this case.

## II. Analysis of the Merits

This Court does not explain why it rejects applicant's claims for relief. Rather than simply state that I would grant relief as to the merits of his applications, I provide my reasoning here.

Applicant's claims pertain to the bar on multiple punishments for the same offense. *See Bigon v. State*, 252 S.W.3d 360, 369–70 (Tex. Crim. App. 2008). Applicant was convicted of three offenses for a single act in failing to appear for a court setting on three cases for which he was on bail under the failure to appear/bail jumping statute that states,

A person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release.

Tex. Penal Code § 38.10(a).

Applicant violated three contracts with the trial court to appear for the charges in each of his three cases. In determining whether a particular course of conduct involves one or more distinct offenses under a single statute, we must ascertain the "allowable unit of prosecution" under the statute. *Bigon*, 252 S.W.3d at 371–72. The bail jumping/failure to appear statute does not expressly define the allowable unit of prosecution for the offense. Tex. Penal Code § 38.10. The statutory language, however, focuses on a defendant's failure to appear in accordance with the "terms of his release." It is axiomatic that

applicant is a single person and could be released from his confinement only one time, regardless of the number of cases for which he was being held. Because the statutory language refers to the "terms of his release," this suggests that the gravamen of the offense of bail jumping treats his release as a single thing regardless of whether he is being released on bail on one or many cases. In a situation involving a similar gravamen, this Court has definitively held that only one conviction is permitted. *See Harris v. State*, 359 S.W.3d 625, 630–32 (Tex. Crim. App. 2011) (holding that multiple convictions for indecency with a child by exposure violated double jeopardy because the gravamen of the offense was the exposure and not the number of children present). Similarly, here, the gravamen of the offense of bail jumping is the act of failing to appear in court as required by the terms of applicant's release from confinement on the multiple cases, and not the number of cases for which applicant failed to appear. In accordance with this Court's precedent in *Harris*, applicant may be convicted of only one bail jumping case for his failure to appear on the multiple cases for which he had been released from confinement. *See id.*

## III. Conclusion

In light of this Court's common-law approach to determining whether habeas relief is warranted, I would leave intact the current case law that applies procedural default to double-jeopardy claims on a case-by-case basis. Thus, I would apply the rule of *Gonzalez* to the facts of this case and determine that applicant's double-jeopardy claim is entitled to consideration on its merits. Because the gravamen of the offense of bail jumping is whether applicant failed to meet the terms and conditions of his release from his confinement, and because he failed to appear at a single court setting, applicant has shown,

on the face of the record, that he is entitled to relief from the multiple convictions. I, therefore, would grant his application for relief.